UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JIMMY L. H., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:24 CV 51 JMB |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

On May 7, 2021, Plaintiff Jimmy H. filed for supplemental security income pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*, alleging that he became disabled in March 2005 due to bipolar disorder, schizophrenia, affective mood disorder, feet swell, and back problems. He later alleged an amended onset date of May 7, 2021 (Tr. 10, 38, 77, 181-87). His claim was denied by the Commissioner of Social Security through the administrative process and there is no dispute that he has exhausted his administrative remedies. See 42 U.S.C. § 405(g). Accordingly, this matter is before the Court for review of an adverse ruling by the Social Security Administration as set forth by an Administrative Law Judge (ALJ) on March 21, 2023 (Tr. 10-19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Standard of Review and Legal Framework**

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Ross v. O'Malley, 92 F.4th 775, 778 (8th Cir. 2024). Substantial evidence is "less than a preponderance, but enough that a reasonable

mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (quotation omitted); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (the standard "is not high").  In making this determination, the Court considers evidence that both supports and detracts from the ALJ's decision.  Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007); see also 20 C.F.R. § 404.1520 (setting forth the five-step sequential evaluation process an ALJ uses to determine whether a claimant is disabled); Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (discussing the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow, and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (citing Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  Similarly, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).  If it is possible to draw a position from the evidence that supports the ALJ's findings, the reviewing court must affirm the decision.  Id.  With this standard in mind, the Court will address the specific arguments made by the parties.

## II. Discussion

Plaintiff's sole argument on appeal is that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ erred in determining that he had the mental capability to perform a range of simple, routine, and repetitive tasks.  (ECF No. 10).[1]  Plaintiff's argument requires consideration of the administrative hearing testimony, as well

---

[1] Plaintiff makes no argument concerning the ALJ's findings as to his physical impairments and limitations.

as the findings and medical opinion of the psychological consultative examiner, Dr. James Lane. The Court will discuss this evidence at the outset.

### A. Background

During the June 27, 2022 telephone hearing, Plaintiff testified as follows. He rents a room in a boarding house and has lived by himself for almost a year (Tr. 40-41). Due to his worsening condition, his stress level is "very bad" or "8-10/10," and he feels anxious and depressed (Tr. 43, 49). His anxiety makes him "have to slow down," causes increased heartrate and trembling, and is triggered by arguing (Tr. 49-50). He feels that medication helps him. However, due to logistical and financial difficulties, he is neither taking medication nor undergoing treatment at this time (Tr. 50-51). When he is not on medication, he "can't deal with problems," and he experiences irritability, low motivation, and long-term memory issues (Tr. 51-52). As to his daily activities, his physical pain makes cleaning and personal care difficult. He "tr[ies] to move around" at home, takes the trash out, goes to see pastors at church, and "like[s] to get out from time to time" to shop (Tr. 47-48, 52-53). Due to the lack of medical evidence in Plaintiff's file, the ALJ granted a request for consultative exams, including a psychiatric one (Tr. 35).

On August 5, 2022, Plaintiff reported to Dr. James W. Lane for a psychological consultative examination (Tr. 362-67). Dr. Lane initially noted that Plaintiff provided a "fairly well detailed narrative primarily in support of the bipolar disorder as well as some psychotic symptoms" (Tr. 362-63). Plaintiff reported dysphoric moods, loss of usual interests, irritability, social withdrawal, apprehension, worry, hallucinations, paranoid ideation, memory deficits, and concentration difficulties (Tr. 363). In the past, he has taken medications such as Depakote, Seroquel, Xanax, and Ambien, but he is not taking any currently due to lack of insurance and

financial difficulty (Tr. 363-64). Plaintiff is single and lives in a "rooming house" with approximately six to ten adults. He can dress, bathe, groom himself, prepare microwave meals, sweep up, and occasionally do laundry. He does not drive and rarely shops. His daily activities include watching TV, listening to the radio, reading, and using a phone or computer for social media and games. He doesn't "go out with others because [his] mind is not thinking right," and while he is "often afraid of people," he "tries to get along with the other adults in the rooming house" (Tr. 364).

      Dr. Lane observed the following. Plaintiff's demeanor was cooperative but somewhat suspicious, his manner of relating was fair, he was somewhat disheveled and fairly to poorly groomed, his posture was slouched and tense, his motor behavior was lethargic, and his eye contact was minimal (Tr. 365). He exhibited dysphoric and restricted affect; dysthymic and anxious mood; impaired attention, concentration, and memory due to emotional distress; impaired attention; mildly impaired abstract reasoning, and poor to limited insight (Tr. 366). While Plaintiff's speech intelligibility was fluent and his expressive and receptive language were adequate, his quality of voice was monotonous (Tr. 365). Dr. Lane estimated that his intellectual functioning was below average. He could spell a five-letter word forward but not backward. He could count down from 20 and complete a simple calculation but failed serial sevens and threes. He recalled three out of three objects immediately but only two of those objects after a delay. He repeated five digits forward and four backward (Tr. 366). Dr. Lane's clinical impression was "Bipolar I disorder, severe, most recent episode depressed with psychotic features" (Tr. 366). Dr. Lane concluded that Plaintiff had the following limitations in the four broad areas of functioning. He was moderately limited in his ability to understand, remember, and apply

information, and he was markedly limited in his abilities to interact with others, concentrate, persist, maintain pace, and adapt and manage oneself (Tr. 367).

Dr. Lane completed a Medical Source Statement, indicating that Plaintiff had a mild limitation in his ability to understand and remember simple instructions; that he had moderate limitations in his abilities to carry out simple instructions, make judgments on simple work related decisions, and respond appropriately to usual work situations and to changes in a routine work setting; and that he had marked limitations in his abilities to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and interact appropriately with the public, supervisors, and co-workers (Tr. 368-69). Dr. Lane further indicated that Plaintiff's abilities to concentrate, persist, maintain pace, and adapt or manage oneself were markedly limited. Dr. Lane stated that his findings were based on "full exam and mental status" (Tr. 368-69).

As relevant, Plaintiff underwent an internal medicine examination the same day with Dr. Irim Massay (Tr. 346-51). Dr. Massay's exam notes indicate Plaintiff presented "no evidence of significant cognitive function limitation"; he was "[o]riented to person, place, and time"; "he seemed a little exaggerated in his limitations and a little reluctant to comply with the exam"; he exhibited normal insight; and he was able to spell a five-letter word backward (Tr. 349-50).

The ALJ found that Plaintiff has the severe impairments of bipolar I disorder and a history of personality disorder (Tr. 12). In finding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment (listings 12.04 and 12.08), the ALJ determined that Plaintiff has moderate limitations[2] in the four

---

[2] A "moderate limitation" is defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12 (F)(2). A "mild limitation" is when a claimant's functioning is "slightly limited," a "marked limitation" is

broad areas of functioning (Tr. 13-14). To the extent the ALJ's findings conflicted with Dr. Lane's, the ALJ generally noted that Plaintiff was not on medication at the time of his examination (Tr. 13-14). As to Plaintiff's ability to interact with others, the ALJ noted his cooperation during his interview with the field office, his performance of necessary tasks in public such as going to the laundromat and store, and his living with others in a boarding house (Tr. 13). With respect to Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ noted that although he was unable to spell a five-letter word backward during his examination with Dr. Lane, he was able to do so during his consultative exam with Dr. Massay the same day, that his concentration remained in tack during his field office interview, and that his leisure activities—which include reading, playing video games, and watching television—require extended concentration (Tr. 13-14). Finally, as to Plaintiff's ability to adapt or manage oneself, the ALJ noted he demonstrated normal insight at his examination with Dr. Massay; he lives independently; and he is able to maintain himself without seeking regular assistance, requiring hospitalization, or intensive mental health treatment (Tr. 14).

> In assessing Plaintiff's residual functional capacity, the ALJ determined:
>
> He has the ability to understand, remember, and carry out routine and repetitive tasks and instructions. He can concentrate, persist, and remain on task and pace to perform simple, routine, and repetitive tasks, which may involve multiple non-complex simple, routine, and repetitive steps, tasks, or instructions. He can concentrate, persist, and remain on task and pace to adapt to work in an environment that is free of fast-paced production requirements and involves only simple, work-related decisions with no more than occasional workplace changes. He cannot interact with the public but can work around coworkers with only occasional interactions with coworkers and supervisors.

(Tr. 14). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and

---

when a claimant's functioning is "seriously limited," and an "extreme limitation" is when the claimant cannot function in the area. Id.

other evidence," along with the medical opinions and prior administrative medical findings (Tr. 15). The ALJ concluded that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms were inconsistent with his lack of treatment, clinical presentation, and activities, stating:

> The mental consultative examination supports a reduced [RFC] assessment as described above but not greater limitations. The claimant showed limitations at the examination. For instance, he was lethargic, disheveled, and dysphoric with circumstantial thinking and minimal eye contact. Ex. B4F. His presentation at the examination indicated some limitations. Although limited, the claimant showed an ability to remember two items out of three, answer basic questions, and perform simple tasks. Ex. B4F. His performance supports some retained capacity. Considering the claimant's daily activities, he continues to perform simple activities. He prepares simple food, does light cleaning, picks up, sweeps, goes to the laundry mat, shops, listens to the radio, reads, plays video games, and watches television. Ex. B3F/4; B4F/4. Additionally, the claimant testified that he rents a room in a boarding house where he lives on the second floor and has to go up and down 12 steps to his apartment. This has been his living arrangement for approximately a year. He also testified that he is Catholic and goes to see his pastor where he is able to kneel to pray, and for the most part, is able to get up and down from kneeling without any problems. His activities of daily living show the ability to perform simple tasks as described above.

(Tr. 15-16).

The ALJ addressed Dr. Lane's medical opinion and found it unpersuasive. The ALJ explained that Dr. Lane's opinion was not supported by his consultative examination or consistent with the complete record, offering the following example: "For instance, Dr. Lane describes a marked limitation in adapting and managing oneself, but the examination included the claimant's report that he is able to live in a boarding house and perform necessary living tasks which shows a fair ability to care for himself" (Tr. 17).

### B. Analysis

A claimant's RFC is the most he can still do despite his physical or mental limitations. 20 C.F.R. § 404.1545(a)(1); see also Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004).

The RFC "'is a function-by-function assessment" based upon all of the relevant evidence of an individual's ability to do work-related activities.'" Roberson v. Astrue, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting S.S.R. 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). The ALJ should determine a claimant's RFC based on all relevant evidence, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Moore, 572 F.3d at 523 (quotation omitted).

Ultimately, the RFC determination is a "medical question" that "must be supported by some medical evidence of the claimant's ability to function in the workplace." Combs v. Berryhill, 878 F.3d 642 (8th Cir. 2017) (quotation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). An ALJ "is not limited to considering medical evidence exclusively," and even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Cox, 495 F.3d at 619-20 (citations omitted). While the Court recognizes that an ALJ "may not draw upon his own inferences from medical reports," Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000), the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority," Mabry v. Colvin, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

Plaintiff asserts that the ALJ erred in relying on her own lay interpretation of Dr. Lane's findings and on Plaintiff's daily activities, and in discounting Dr. Lane's medical opinion. Plaintiff contends that in doing so the ALJ failed to support the RFC with "some medical evidence" of his ability to function in the workplace. (ECF No. 10). For support, Plaintiff relies on Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020) (finding that the "the absence of evidence

to suggest the accuracy or propriety of" an ascribed standing limitation demonstrated that the ALJ did not fulfill the duty to fully develop the record and warranted remand), and Ackerman v. Kijakazi, No. 4:21-CV-814 PLC, 2023 WL 2496839, at *5 (E.D. Mo. Mar. 14, 2023) (citing Noerper; "although she thoroughly summarized the medical evidence of record, the ALJ did not justify how she translated her understanding of the medical evidence into a conclusion that Plaintiff could engage in light work").

The Court finds Plaintiff's arguments unavailing. As an initial matter, an ALJ is not required to adopt or give heightened weight to a medical opinion simply because it is the only one of record. Hensley, 829 F.3d at 932 ("there is no requirement that an RFC finding be supported by a specific medical opinion"); see also Cox, 495 F.3d at 619-20 (an ALJ is not required to seek clarification in the absence of medical opinions where medical records and other evidence support the RFC determination). Additionally, contrary to Plaintiff's assertions, an ALJ may discount a medical opinion in light of the inconsistency of that opinion with a claimant's activities of daily living. See, e.g., Thomas v. Berryhill, 881 F.3d 672, 676 (8th Cir. 2018) ("Thomas's self-reported activities of daily living provided additional reasons for the ALJ to discredit Dr. Hollis's pessimistic views of her abilities"); Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018); Bryant v. Colvin, 861 F.3d 779, 783 (8th Cir. 2017).[3]

Upon consideration of the record, it cannot be said that the ALJ misapplied her own inferences to determine the medical evidence. Rather, the ALJ adequately evaluated all the available evidence, including the relevant hearing testimony, Plaintiff's activities of daily living, and the observations set forth in Dr. Massay's and Dr. Lane's medical evaluations. The ALJ

---

[3] To the extent Plaintiff argues that the ALJ erred finding Dr. Lane's medical opinion unpersuasive, the Court finds that the ALJ adequately discussed the consistency and supportability factors pursuant to 20 C.F.R. § 404.1520c(b)(2).

then appropriately documented her consideration of the evidence and developed an RFC which sufficiently accounted for Plaintiff's moderate limitations in the four broad areas of functioning. See Hahs v. Berryhill, 2018 WL 4216668, at *7 (E.D. Mo. Sept. 5, 2018) (a moderate limitation in Plaintiff's ability to function was "readily apparent in the ALJ's restriction of Plaintiff in the RFC to only simple, routine, repetitive tasks…").

The Court further finds Plaintiff's reliance on Noerper and Ackerman misplaced. This is not a case in which "the absence of evidence translating the medical evidence and subjective complaints into functional limitations…leaves [the Court] unable to determine the permissibility of the Commissioner's RFC determination." Noerper, 964 F.3d at 747.  In assessing Plaintiff's abilities in the four broad areas of functioning, the ALJ documented and discussed Plaintiff's demonstrated abilities during his evaluations, his living arrangements, and his daily activities.  In addressing each of the four categories, the ALJ offered specific reasons from the record for discounting Dr. Lane's medical opinion, including the fact that Plaintiff had in certain respects presented differently to Dr. Massay than he had to Dr. Lane.  In determining Plaintiff's RFC, the ALJ explained that, during Plaintiff's evaluation, he showed an ability to remember two items out of three, answer basic questions, and perform simple tasks.  The ALJ further explained that his activities of daily living showed an ability to perform simple tasks; namely, his preparing of food, light cleaning, going to the laundry mat, shopping, listening to the radio, reading, playing video games, watching television, and attending church.

The Court reviews the record "to ensure that an ALJ does not disregard evidence or ignore potential limitations, but does not require an ALJ to mechanically list and reject every possible limitation."  Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090-91 (8th Cir. 2018) (quotation omitted).  In light of this standard, the Court finds that the ALJ's assessment of

the evidence of record and the ultimate RFC determination fall within the "zone of choice." <u>Buckner</u>, 646 F.3d at 556 (an ALJ's decision is not outside the zone of choice simply because the reviewing Court might have reached a different conclusion had it been the initial finder of fact).

\* \* \* \* \*

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

A separate Judgment shall accompany this Memorandum and Order.


*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE


Dated this <u>14th</u> day of January, 2025.